CHARLES L. REESE, JR., Appellant-Respondent, *v.* TEXAS COMPANY, Respondent-Appellant.

First Department, July 2, 1943.

*Kenneth M. Spence* of counsel (*Soia Mentschikoff* and *Isidore Nassau* with him on the brief; *Spence, Windels, Walser, Hotchkiss & Angell,* attorneys), for appellant-respondent.

*Joseph M. Proskauer* of counsel (*Oscar J. Dorwin, Theodore J. Miller* and *Eugene Eisenmann* with him on the brief; *Oscar John Dorwin* and *Dunnington, Bartholow & Miller,* attorneys), for respondent-appellant.

CALLAHAN, J. The complaint herein asserted a cause of action for the reasonable value of two items of services alleged to have been rendered by plaintiff's assignor, one Constantin I. Chadinoff, to the defendant at the latter's special instance and request between September 1, 1930, and March, 1932. The case was submitted to the jury as if the two items were separate causes of action, i. e., (1) a claim for the value of Chadinoff's services in connection with the acquisition by defendant of stock control of a French corporation known as Raffineries de Petrole de la Gironde S. A. (hereinafter referred to as " Gironde "), and (2) for the value of Chadinoff's services in connection with a twenty-year contract for the supply of crude oil made between defendant and Gironde.

The jury awarded plaintiff a verdict for $200,000, which it stated was made up as follows: $108,144 for Chadinoff's services in connection with the acquisition of stock control, and $91,856 for his services in connection with the crude oil contract.

It is our view that the plaintiff failed to establish the right to recover on either of these claims, for the reason, among others, that the proof failed to establish any employment of Chadinoff by the defendant with respect to the matters upon which recovery was had.

By reason of the jury's verdict, we must deem all disputed issues of fact resolved in plaintiff's favor. Considered in that light Chadinoff's testimony discloses that he came to the United States in 1930 for the purpose of obtaining a contract for the sale of crude oil from defendant to Gironde. In connection with the negotiations for this contract, Chadinoff discussed with defendant's representative the general condition of the petroleum industry in France. He suggested the wisdom of defendant's opening relations with Gironde by making the proposed sale of crude oil. He further suggested that some arrangement might be worked out whereby a French corporation affiliated with the defendant, known as The Texas Company S. A. F., might have lubricating products which it sold in France manufactured for it by Gironde. He intimated that it would be quite logical that defendant would eventually acquire a participation in Gironde in order to establish the gasoline end of its business in France.

Chadinoff conceded that at the time of this discussion in 1930 there was no possibility of his suggestions being consummated as Gironde was not then licensed to carry on the oil refining business in France, and was not presently interested in obtaining foreign capital. Chadinoff told defendant that the time would probably arrive at which a proposal of participation would be acceptable to Gironde, and by taking the crude oil contract defendant would be in a good position when the opportunity arose. He admitted that defendant's representative with whom he had these discussions merely replied that any such matter must be decided by a higher officer.

Chadinoff asked defendant for a commission of two per cent on the crude oil sale then being negotiated, and said: "If the deal will go through, I will expect compensation from the Texas Company."·

One of plaintiff's witnesses testified to being present at this conversation. He remembered that Chadinoff talked about what the witness called a "major plan" of trying to get defendant interested in the French refining field, and that Chadinoff stated he was there as an independent, with the hope that something of value to defendant might be put through. He had no recollection of hearing any compensation discussed.

Chadinoff stated that he later had a somewhat similar discussion with a higher officer in defendant's company who concededly had authority to bind defendant. He was discussing with this officer the proposed draft of the contract for the supply of crude oil then being negotiated, and during these negotiations he suggested that later on he expected it might be possible for The Texas Company to go into "partnership" with Gironde. He told that officer that if this deal should be consummated Chadinoff would expect compensation from the defendant. Chadinoff conceded that he received neither an affirmative nor negative answer to this suggestion. It is in the foregoing that we must find a hiring, if one took place. We fail to find any sufficient proof thereof.

Terms were agreed upon for the sale of crude oil for a period of three years. Defendant agreed to pay Chadinoff two per cent commission on these sales, provided Gironde would consent to such payment. This would indicate that, despite Chadinoff's alleged statement that he was independent and did not represent Gironde, defendant considered that he was Gironde's agent. Defendant, despite the fact that Chadinoff was Gironde's agent, was willing, as seller, to pay commission on the sale of crude oil, with Gironde's approval. The consummation of this contract was postponed from time to time by reason of Gironde's financial inability to meet the terms of sale. In fact the sale was never consummated.

Chadinoff returned to France, and from that time on any discussions he had were with an officer of The Texas Company S.A.F. who concededly had no power to bind defendant, but who from time to time transmitted some of Chadinoff's suggestions to defendant in America.

During the following months, Gironde's financial standing became hazardous. Early in 1931 representations were made by Chadinoff through defendant's French affiliate that Gironde desired to secure defendant's financial assistance. These suggestions first took the form of requests that defendant invest a certain sum in Gironde. Defendant indicated at the time that it was not interested in doing so. Then Chadinoff suggested an arrangement for the formation of a separate distributing company, to which defendant was to subscribe. Defendant also rejected this suggestion.

During this period, defendant was negotiating to acquire an interest in a French petroleum company which was in no way connected with Gironde. When these negotiations fell through because the second company was unable to secure a license,

defendant for the first time suggested that it might be interested in taking a substantial participation in Gironde on the same basis as the founding stockholders. This was first mentioned by defendant to its French representative in the spring of 1931. It was first broached to Gironde in the fall of 1931. In the meantime, Gironde's financial condition had continued to grow worse.

In September, 1931, after the matter had been discussed between them several times, Chadinoff made a definite agreement in writing with Gironde for the payment to him by Gironde of six per cent commission on any moneys which would be subscribed by defendant to purchase Gironde's capital stock.

Negotiations continued for a period of months between representatives of defendant and Gironde. Chadinoff took an active part in these negotiations. At about this time the defendant agreed to supply Gironde with 40,000 tons of crude oil under an arrangement that was practically a sale on consignment, as an aid in getting Gironde started in the refining of oil, so as to make its financial situation appear more favorable. Chadinoff was active in arranging this sale and received from defendant a commission on the amount paid for the 40,000 tons, after Gironde had consented to the payment thereof.

In November, 1931, after a visit by defendant's representatives to Gironde's refinery in France, defendant made a firm bid to invest a certain amount in Gironde's capital stock and to advance additional funds to take care of Gironde's debts, and to provide working capital. Defendant insisted, as a condition of its investment, that Gironde was not to pay the six per cent commission to Chadinoff, defendant having learned of Gironde's promise to pay same. Thereupon Chadinoff made a new arrangement for his compensation with the stockholders of Gironde, whereby they agreed to transfer to him certain shares of their stock as compensation for his services in securing the new capital.

The deal for defendant's stock participation in Gironde eventually closed on December 10, 1931. It was in the form of an exchange of letters between The Texas Company S.A.F. and Gironde.

In addition to an agreement by The Texas Company S.A.F. to make a capital investment and to pay creditor's claims, there was an agreement by defendant to supply Gironde's needs for crude oil for the following twenty years.

It is for Chadinoff's alleged services in connection with the securing of this capital investment that the jury awarded plain-

tiff $108,144. It awarded $91,856 for Chadinoff's services in connection with the crude oil contract last referred to above.

It appears that $91,856 was exactly two per cent of the price of the total quantity of oil delivered to Gironde during the first three years after the contract of December 10, 1931, became effective. The jury apparently fixed this sum as the fair value of Chadinoff's services for this part of the work.

The trial court advised the jury that, although there was no proof of any express agreement by defendant to employ Chadinoff in connection with the acquisition of stock control, the jury might imply such an agreement from the circumstances.

We think that the submission of this issue to the jury was error, and that the evidence of any alleged hiring of Chadinoff by defendant was too vague to warrant any implication of an agreement to employ or compensate him for any services he might render in connection with the matters referred to. The 'evidence, at best, discloses merely a suggestion by Chadinoff that there might eventually be worked out some deal whereby 'defendant could secure an interest in Gironde. This sug-'gestion was entirely nebulous. A "partnership" was the nearest thing to a concrete suggestion made to defendant's authorized representative. At that time there was no thought of the agreement that eventually came about. There was no reason why defendant might not consider this suggestion mere sales talk which was part of the negotiations for the sale of crude oil. To permit the jury to determine that such a discussion contemplated the employment of Chadinoff at defendant's expense in connection with matters which developed a year later was mere speculation.

It is to be noted that the employment contended for by plaintiff was in the nature of one for dual compensation. Even if the employment was one of brokerage, an arrangement for dual compensation is not, generally speaking, deemed within the contemplation of the parties. (*Fox Co. v. Wohl*, 255 N. Y. 268.) An implication of such an arrangement should not be permitted on any such sketchy proof as we have here. Rather than proving any dual employment, the evidence disclosed that Chadinoff was Gironde's agent in the negotiations to secure capital. He was fully compensated by the stockholders of Gironde for this work after he had secured an agreement in writing by Gironde to compensate him.

Plaintiff relies on *Knauss v. K. B. Co.* (142 N. Y. 70) as establishing the rule that where a broker is employed merely to find a customer on terms fixed by the employer, double

employment is permissible without revealing the fact to either party. Assuming that to be the rule, the present case did not involve any such situation. Chadinoff was not employed merely to put the parties in touch with each other. Here the interests of the parties were diverse, and Chadinoff occupied a position of confidence. He took an active part in attempting to mould the terms of the deal. How far he went in trying to insure the adoption of his suggestions is indicated by reference to his advice to defendant that its competitors were seeking to gain control of Gironde.

When defendant agreed to pay Chadinoff commissions on the sale of crude oil, it asked for and received Gironde's consent to such payment. As to the services in suit, the obtaining of such a consent was never called for. Not only this, but defendant refused to permit Gironde's funds to be used to pay the commission that Gironde had promised Chadinoff. This was convincing proof that there had been no agreement on defendant's part to hire Chadinoff for the purposes mentioned. The theory of the law in implying an employment by one who accepts the benefits of another's services has no application where an intermediary is known to be in the employ of the other contracting party; otherwise an inference of the right to double compensation would always exist.

As to the second branch of this appeal, to wit, that relating to commissions on the twenty-year crude oil contract, plaintiff's proof was even less convincing. Chadinoff conceded that there was no discussion whatever between him and the defendant concerning any commissions on the oil delivered under the twenty-year contract. He admitted that he had nothing to do with the negotiations for this contract. He never even heard of it until after it was executed. The theory upon which recovery was allowed as to this part of Chadinoff's claim was that the twenty-year contract resulted from a continuation by the parties of the negotiations which they had entered into in 1930 for the three-year supply of crude oil. The trial court submitted to the jury as a question of fact whether the twenty-year contract had followed as a continuation of the first negotiations. The evidence clearly discloses that the two transactions were entirely separate and distinct. The first was an attempt to arrange a sale of oil for three or five years on a cash basis, negotiated by two concerns unrelated to each other, and who were dealing at arm's length. The twenty-year contract was a contract to supply crude oil as part of the transaction whereby defendant obtained control of Gironde. In other

words, it was an arrangement to secure a long term source of supply for an affiliate. Under such circumstances, there was no basis for an award of commissions on the theory that the parties had continued the negotiations initiated by Chadinoff as an intermediary. (*Brown* v. *Snyder*, 57 App. Div. 413; *Sternberg* v. *Bellanca Aircraft Corp.*, 259 App. Div. 538.) Nor do we find any basis for an implied agreement to pay commissions to Chadinoff on the twenty-year contract merely because they were paid on earlier sales of oil.

For the reason that the evidence was insufficient to establish a *prima facie* case, we are required to reverse the judgment and dismiss the complaint. Under the circumstances, it becomes unnecessary for us to discuss the remaining assignments of error.

The judgment should be reversed, with costs to the defendant, and the complaint dismissed, with costs.

MARTIN, P. J., TOWNLEY, UNTERMYER and COHN, JJ., concur.

Judgment unanimously reversed, with costs to the defendant, and the complaint dismissed, with costs.